UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Crim. No. 3:08CR224(EBB) |
| STAVROS M. GANIAS | : | |

RULING ON MOTIONS FOR NEW TRIAL & FOR RECONSIDERATION

The defendant, Stavros Ganias ("Ganias"), was convicted after a three-week jury trial of two counts of tax evasion in violation of 26 U.S.C. § 7201.  On the eve of sentencing, Ganias filed the instant motion for a new trial and for an evidentiary hearing based on alleged juror improprieties, specifically (1) comments a juror ("Juror X") posted on his Facebook account that indicated possible bias and a predisposition to find guilt and (2) improper communications between Juror X and another juror ("Juror Y") during the trial.  According to Ganias, such bias and misconduct violated his right to a fair trial in contravention of the Sixth Amendment and warrants a new trial pursuant to Fed. R. Crim. P. 33(a).

The Court permitted Ganias to conduct a limited interview of Juror X to determine if there was any evidence of bias or misconduct, but terminated the inquiry when it became clear that no prejudicial impropriety existed.  Ganias then filed a motion asking the Court to reconsider its decision to terminate the inquiry and its denial of his request for subpoenas and an additional interview to enable him to obtain proof to support his claims.

For the following reasons, the Court concludes that Ganias has failed to satisfy the stringent requirements for the relief he seeks and accordingly DENIES both his motion for a new trial [doc. #260] and motion for reconsideration [doc. # 271].

## STANDARD

"The sanctity of the jury room is among the basic tenets of our system of justice." Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc. 836 F.2d 113, 114 (2d Cir. 1987).  Thus, post-verdict inquiries into the jury-deliberation process are greatly disfavored because they could undermine "full and frank discussions in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." United States v. Stewart, 433 F.3d 273, 302 (2d Cir. 2006).  Accordingly, a defendant who seeks a new trial on grounds of juror misconduct or undisclosed bias faces a very high hurdle.  United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989).  Such an investigation is justified only when reasonable grounds exist – *i.e.,* there must be clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial.  Id.; United States v. Sun Myung Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) ("Courts are, and should be, hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.").

An essential element of a defendant's right to a fair trial is an impartial jury.  To ensure the selection of an impartial jury, the court and the parties engage in the *voir dire* process and ask questions of potential jurors which are designed to expose any possible known or unknown biases that they might harbor.  McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (noting that truthful answers by prospective jurors during *voir dire* is obviously necessary if this process is to serve its purpose).  Thus, to warrant a new trial based on undisclosed bias that may have affected a juror's fairness and impartiality, a defendant must first demonstrate that a juror failed to honestly answer a material question and then show that a correct response would

have provided a valid basis to assert a for-cause challenge.  Id. at 556.  This analysis, known as the McDonough test, requires a court to first find that a juror answered a question dishonestly, as opposed to merely failing in good faith to respond to a question, and then determine if it would have granted a challenge for cause based on a truthful answer.  Greer v. United States, 285 F.3d 158, 171 (2d Cir. 2002) (noting that bias is generally a ground to grant a challenge for cause).  Only if a defendant satisfies both prongs of the McDonough test – by showing:  (1) a juror deliberately omitted or misstated facts during *voir dire* and (2) the juror's nondisclosure concealed some bias or partiality that would have sustained a for-cause challenge –  will he be granted a new trial.  United States v. Stewart, 317 F. Supp. 2d 432, 437 (S.D.N.Y. 2004).

In addition, juror misconduct in the form of premature deliberations or intra-jury communications may violate a defendant's Sixth Amendment right to a fair and impartial jury.  United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003) ("Where the district court instructs a jury to refrain from premature deliberations . . . and the jury nonetheless discusses the case before the close of trial, that premature deliberation may constitute juror misconduct.").  Where, as here, an allegation of misconduct involves intra-jury communications, the probability of some adverse effect on the verdict is far less than where there are extra-jury or extraneous influences or communications.  United States v. Sabhnani, 529 F. Supp. 2d. 384 (E.D.N.Y. 2008), aff'd 599 F.3d 215 (2d Cir. 2010); cert. denied 131 S.Ct. 1000 (2011).  If this type of juror misconduct is established, a new trial or other remedial measure is required only if it results in actual prejudice to the defendant.  United States v. Abrams, 137 F.3d 704, 709 (2d Cir. 1998).

A trial judge has broad flexibility in responding to allegations of juror impropriety. United States v. Sabhani, 599 F.3d at 250. If a court determines that reasonable grounds exist to justify a post-verdict investigation to give the defendant an opportunity to prove actual bias or misconduct, the inquiry must be carefully tailored so that it does not violate the provisions of Fed. R. Evid. 606(b) and should be terminated whenever it becomes apparent that there are no reasonable grounds to suspect that a prejudicial impropriety exists. United States v.Stewart, 433 F.3d at 302.

## BACKGROUND

After the jury returned a guilty verdict and just before sentencing, Ganias moved for an evidentiary hearing and a new trial on the grounds that he had discovered information showing that one of the jurors was predisposed to find him guilty. More specifically, Ganias asserted that the day after Juror X was selected to serve on the jury, but before the start of evidence, he posted the following comment on his Facebook wall: "Jury duty 2morrow. I may get 2 hang someone . . . can't wait . . ." In addition, Juror X posted these other comments on his Facebook page during the course of the trial: "Jury duty sucks;" "Guinness for lunch break. Jury duty ok today;" "Your honor, i [sic] object! This is way too boring. . . . Somebody get me outta here;" and on the day of the verdict he posted "Guilty :) . . . I spent the whole month of March in court. I do believe justice prevailed! It was no cake walk getting to the end. I am glad it is over and I have a new experience under my belt!" According to Ganias, these postings and the comments a few of Juror X's Facebook friends posted in response constitute improper extraneous third-party contact about the case during the trial.

Ganias further asserts that Juror X and Juror Y became Faceboook friends a few days after the start of trial and, although he has no evidence of any specific misconduct, claims that they had improper intra-jury discussions and premature deliberations about the case and that their friendship posed a high risk that "poisoned the deliberations" of the jury.

Based on the nature of Juror X's Facebook comments, the Court concluded there were reasonable grounds to interview Juror X.  On August 30, 2011 Juror X appeared before the Court in chambers and was questioned by Ganias's counsel and the government to determine whether his Facebook postings reflected any bias or predisposition that he did not reveal or disclose during *voir dire.*

In response to Ganias's initial question about his Facebook account, Juror X stated that he "had a Facebook account but recently got rid of it because it was taking too much time for nothing."  Later on in the interview he admitted that he closed his Facebook account because he had many female Facebook friends from the bar where he worked and that "bugged" his wife and he didn't want to have her upset.  Juror X also acknowledged that he posted the comment about possibly getting to "hang someone," but explained it "was a joke," he was "just joking, joking around" and that it "did not reflect his mindset was [sic] at that time" and asserted that his "mind was not made up until the end."  According to Juror X, he "absolutely was an impartial and fair juror."

Juror X further admitted that he became a Facebook friend of Juror Y during the trial.  He did so, he said, because he wanted to play golf with her fiancé.  He said he had no conversations or discussions with Juror Y or any other jurors about the subject matter of the case during the

5

course of the trial either inside or outside the jury room. He noted that all of the jurors became friendly during the trial and even had a reunion picnic after the verdict.

After both parties concluded their questioning of Juror X, the Court concluded that the interview had not produced any reasonable ground, let alone any strong, clear or incontrovertible evidence, to support Ganias's allegations of bias or misconduct and ended the inquiry. The Court also denied Ganias's request to go further and allow him to subpoena Juror X's Facebook records and to interview Juror Y about her discussions and communications with Juror X.

## DISCUSSION

In this case, despite giving Ganias an opportunity to interview Juror X to obtain evidence to support his claims of juror bias and misconduct, he has not established the existence of reasonable grounds that warrant a further inquiry or a new trial. The post-verdict examination of Juror X was an appropriate and adequate response to Ganias's initial claims of juror bias and misconduct. The inquiry was broad enough to lead the Court to conclude that Ganias's claims of juror impropriety were purely speculative and unsubstantiated and that a more extensive inquiry along the lines Ganias requested could rise to the level of juror harassment.

Juror X's answers to counsels' questions were unequivocal. With regard to his alleged bias, Juror X testified that he had not predetermined guilt, did not harbor any pro-government bias and kept an open mind throughout the trial. He adequately and credibly explained that he was just "joking around" with friends when he made the Facebook comment about possibly getting a chance to hang someone. The questioning failed to uncover any evidence whatsoever that Juror X did not honestly answer a material question during *voir dire*. Not only does the Court find that Juror X was credible and his testimony truthful, his answers are presumptively

honest. United States v. Cox, 324 F.3d at 86 (noting that there is a general presumption that jurors remain true to their oath and conscientiously observe the trial court's instructions); United States v. Rosario, 111 F.3d 293, 300 (2d Cir. 1997). Ganias has not offered anything that would cause the Court to question its credibility determination or to rebut the presumption that Juror X remained true to his oath and conscientiously observed the Court's instructions. In the absence of any evidence that Juror X did not honestly answer a material question during *voir dire*, the inquiry into undisclosed bias under McDonough can go no further. Based on the entire record before the Court, there are no grounds to doubt Juror X's fairness and impartiality.

Similarly, Ganias has failed to substantiate his allegations of improper intra-jury communications and premature deliberations. Juror X testified credibly and without hesitation that he had no improper communications about the case with Juror Y or any other jurors and that he did not engage in premature deliberations. Ganias has not come forward with any new ground or evidence to warrant further inquiry in this regard. United States v. Ianniello, 866 F.2d 540, 543 (2d Cir. 1989) (noting that the Second Circuit "has consistently refused to allow a defendant to investigate jurors merely to conduct a fishing expedition.").

Simply put, the Court is satisfied that Juror X kept an open mind throughout the trial and participated in deliberations in good faith. Ganias has failed to demonstrated any juror bias or misconduct, let alone any prejudice. In the absence of any clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative prejudicial impropriety existed, neither an expanded inquiry nor a new trial is warranted.

CONCLUSION

For the foregoing reasons, Ganias's motions for a new trial [doc. #260] and for reconsideration [doc. #271] are DENIED.

A sentencing date will be set forthwith and a calendar will issue.

SO ORDERED.

/s/_____
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated this 5<u>th</u> day of October, 2011 at New Haven, Connecticut.